| | |
|---|---|
| DISTRICT COURT, 8th JUDICIAL DISTRICT<br>LARIMER COUNTY, COLORADO<br><br>201 Laporte Avenue, Suite 100, Fort Collins, CO 80521<br>(970) 498-6239 | DATE FILED: June 13, 2023 3:41 PM<br>FILING ID: 6FEE2261A748F<br>CASE NUMBER: 2023CV30337 |
| Plaintiff: Cecilia Jewell<br><br>v.<br><br>Defendant: Owners Insurance Company | ▲ Court Use Only ▲ |
| Attorney for Plaintiff<br>Mac Hester, #18836<br>Mac Hester LLC<br>2000 South College Ave., Ste. 220, Fort Collins, CO 80525<br>Phone Number: 970-493-1866; Fax Number: Not designated<br>mhester132@gmail.com | Case No. 23 CV 30337<br><br>Division: 5A |
| **AMENDED COMPLAINT** | |

The Plaintiff, through undersigned counsel, states the following amended complaint against the Defendant:

### PARTIES, JURISDICTION, AND VENUE

1. At all relevant times, Plaintiff Cecelia Jewell (Jewell) resided in Larimer County, Colorado (P.O. Box 1494, Wellington, CO 80549).

2. Defendant Owners Insurance Company (Owners) is a stock insurance company with its headquarters and principal place of business in Michigan and does business in several states, including Colorado.

3. The automobile collision referenced in this action happened in Larimer County, Colorado.

4. The insurance policy insuring Jewell's automobile at the time of the collision was executed and performed in Larimer County, Colorado.

# EXHIBIT A

5. Jurisdiction and venue are proper in the District Court for Larimer County, Colorado.

### FACTUAL BACKGROUND – AUTOMOBILE COLLISION, LIABILITY INSURANCE, AND LIABILITY SETTLEMENT

6. On May 1, 2018, Jewell was driving northbound on Third Street in Wellington, Colorado.

7. At the same date and time, Gabriel Alvarado (Alvarado) was parked, facing northbound, on Third Street in Wellington, Colorado.

8. Alvarado pulled out from his parking space into Jewell's lane of travel and struck Jewell's vehicle.

9. Jewell complained of neck and back pain at the incident scene and was transported by ambulance to Poudre Valley Hospital.

10. Alvarado was negligent.

11. As a result of Alvarado's negligence, Jewell suffered the following past and future damages: physical injuries, pain, mental and emotional distress arising as a natural consequence of being injured, permanent injuries, permanent impairment, permanent disability, loss of earnings, loss of earning capacity, loss of future wages and benefits, medical expenses, incidental expenses, inconvenience, and loss of enjoyment of life.

12. Jewell had difficulty in determining whether Alvarado was covered by liability insurance at the time of the incident.

13. At the time of the incident, Jewell had in place uninsured motorist (UM) and underinsured motorist (UIM) coverage with Owners Insurance Company (Owners).

14. On January 4, 2019, Jewell, through Mac Hester Law (MHL), notified Owners that Alvarado might be uninsured.

# EXHIBIT A

15. Owners investigated Alvarado's liability insurance coverage and determined that Alvarado was insured against liability by Nationwide Insurance Company (Nationwide).

16. Jewell settled her liability claim against Alvarado for Nationwide's policy limits of $25,000.

17. Owners consented to the liability settlement.

18. On May 7, 2021, Jewell received a $25,000 check dated April 30, 2021 from Nationwide in payment of the liability settlement.

**FACTUAL BACKGROUND – INVESTIGATION OF THE UNINSURED/UNDERINSURED MOTORIST CLAIM**

19. On January 16, 2019, a letter from "Tanya Churchwell, Auto-Owners Insurance Company Branch Claims Representative," with letterhead "Auto-Owners Insurance Life Home Car Business," with a return address of "Broomfield Claims Branch, P.O. Box 6490, Broomfield, CO 80021-6490, 269 E. Flatiron Crossing Dr., Broomfield, CO 80021-6490; p. 800.305.0130 f 303.262.1017; auto-owners.com; Broomfield.clm@aoins.com", acknowledged receipt of the letter of representation from Mac Hester Law (MHL) and provided a copy of Jewell's automobile insurance policy.

20. Jewell's automobile insurance policy contains the title "Automobile Insurance Policy" and below that the words, "Owners Insurance."

21. The Declarations Page of the Jewell policy contains the heading, "Owners Insurance, 6101 Anacapri Blvd., Lansing, MI 48917-3999."

22. The 6101 Anacapri Blvd., Lansing, MI 48917-3999 address is the address of the headquarters of Auto-Owners Insurance Company.

23. The January 16, 2019 letter from Auto-Owners Insurance requested that Jewell provide information about potential liability insurance regarding the May 2018 automobile collision and also requested medical records related to the incident.

3

# EXHIBIT A

24. In response to Auto-Owner Insurance's January 16, 2019 letter-request, Jewell (via MHL) informed Auto-Owners Insurance that she was investigating the existence of liability insurance and that to her knowledge, there were no other policies of insurance other than the Auto-Owners Insurance UM/UIM coverage.

25. On March 7, 2019, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued a letter requesting the provision of medical records and billing records.

26. On March 18, 2019, Jewell (via MHL) sent a letter to Auto-Owners Insurance stating that she was still receiving medical treatment and would furnish all medical and billing records once she had reached maximum medical improvement. In this letter, Jewell also provided an update on her investigation of liability insurance coverage and requested that Auto-Owners Insurance provide a copy of her UM/UIM coverage policy.

27. By letter dated May 6, 2019, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," requested the provision of medical records, billing records, and information pertaining to liability insurance coverage and stated that if the records requested by the March 7, 2019 letter were not received within 60 days, then Jewell's UM/UIM file would be closed.

28. On May 10, 2019, Jewell (via MHL) mailed a CD to Auto-Owners Insurance containing all medical and billing records to date. Jewell also informed Auto-Owners Insurance that to her knowledge, there was no liability policy available.

29. On May 31, 2019, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued a letter requesting the provision of medical records, billing records, and a copy of the liability insurance declarations page.

30. On June 5, 2019, Jewell (via MHL) sent a letter to Auto-Owners Insurance reiterating that no liability insurance coverage had been found and that a CD containing medical records and billing records was sent to Auto-Owners Insurance on May 10, 2019. Jewell indicated that she was still receiving medical treatment and would provide updated records when they became available.

**EXHIBIT A**

31. On June 2, 2019, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued a letter requesting the provision of medical records, billing records, and a copy of the liability insurance declarations page.

32. On July 2, 2019, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued a letter requesting information regarding all liability insurance that may be available.

33. On July 6, 2019, Jewell (via MHL) emailed Auto-Owners Insurance inquiring whether Auto-Owners Insurance has accepted coverage under her UM/UIM coverage. As no response was received, another email was issued on June 19, 2019 reiterating the question. No response was received.

34. On July 15, 2019, Jewell (via MHL) sent a letter to Auto-Owners Insurance via certified mail stating that there was no liability coverage available and asking Auto-Owners Insurance to accept coverage under her UM/UIM coverage. A CD containing medical records and billing records was enclosed with this letter.

35. On July 26, 2019, Jewell (via MHL) sent a letter to Auto-Owners Insurance requesting the property damage report and corresponding color photographs regarding the vehicles involved in the incident.

36. On August 12, 2019, Jewell (via MHL) issued a letter to Auto-Owners Insurance reiterating the request for property damage report and corresponding color photographs.

37. On August 12, 2019, Jewell (via MHL) emailed Auto-Owners Insurance inquiring whether Auto-Owners Insurance was accepting responsibility to pay her damages in accordance with her UM/UIM coverage.

38. On August 12, 2019, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued an email stating that there was coverage available for UM/UIM benefits.

39. On September 30, 2019, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued a letter requesting additional documentation, medical records, and billing records.

**EXHIBIT A**

40. On October 15, 2019, Jewell (via MHL) issued a letter to Auto-Owners Insurance via certified mail inquiring what additional documentation was needed. The letter also stated that Jewell was still receiving treatment for her injuries. Updated medical records and billing records were furnished along with a signed authorization for release of information to enable Auto-Owners Insurance to request updated records at the time of their choosing.

41. On November 15, 2019, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued a letter requesting medical records and billing records for the past seven years, information regarding the at-fault vehicle, and a statement from Jewell regarding her medical history and post-accident treatment. (Auto-Owners Insurance was in possession of a signed medical records release authorization.)

42. On November 19, 2019, Jewell (via MHL) responded by letter to Auto-Owners Insurance's November 15, 2019 request. Information regarding the at-fault vehicle was provided, medical records and billing records were provided, and a signed authorization for release of information was *again* provided.

43. On February 10, 2020, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued a letter stating that they were investigating the coverage that may be available for this claim. Auto-Owners Insurance requested a statement from Jewell.

44. On March 12, 2020, Jewell (via MHL) provided a notarized written statement regarding her medical history and post-accident treatment to Auto-Owners Insurance.

45. On May 11, 2020, Owners Insurance issued a check/"Fisher payment" in the amount of $6,416.64 to Jewell.

46. On May 20, 2020, "Tanya Churchwell, Brach Claims Rep, Auto-Owners Insurance," issued a letter stating that they had sent Jewell's medical records to Dr. Marjorie Eskay-Auerbach, who questioned the causation of Jewell's injuries.

47. Dr. Marjorie Eskay-Auerbach is an orthopedic doctor and a lawyer.

48. Dr. Marjorie Eskay-Auerbach is employed by Biodynamic Research Corporation (BRC).

# EXHIBIT A

49. BRC's main source of revenue and income is the provision of expert services and reports to insurance companies and insurance defense law firms for the purpose of defending against the legal claims of claimants who have suffered injuries and/or damages.

50. Auto-Owners Insurance and Owners Insurance use Dr. Marjorie Eskay-Auerbach to assist it in denying or diminishing UM/UIM claims by Auto Owners Insurance and Owners Insurance policyholders through reviews of policyholder medical records and billings without personally examining or talking with the injured policyholders.

51. Auto-Owners Insurance and Owners Insurance have used Dr. Marjorie Eskay-Auerbach on many occasions to assist it in denying or diminishing UM/UIM claims by Auto-Owners Insurance policyholders through reviews of policyholder medical records and billings without personally examining or talking with the injured policyholders.

52. Dr. Marjorie Eskay-Auerbach did not personally examine or talk with Jewell.

53. On June 4, 2020, Jewell (via MHL) issued a letter to Auto-Owners Insurance requesting a copy of all records that Auto-Owners Insurance obtained using the medical authorization signed by Jewell.

54. On June 15, 2020, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," issued an email stating that they found liability insurance with Nationwide pertaining to the at-fault driver. Auto-Owners Insurance requested that Jewell contact Nationwide to open a claim.

55. By letter dated June 15, 2020, Jewell (via MHL) made a liability claim against the at-fault driver's liability insurance and requested that Nationwide accept liability for the May 2018 incident.

56. Jewell (via MHL) advised Auto-Owners Insurance of the Nationwide claim and claim number, and on June 22, 2020, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," confirmed receipt of the liability insurance claim number and requested an update on the claim.

# EXHIBIT A

57. On June 22, 2020, Jewell (via MHL) provided an email update to Auto-Owners Insurance on Jewell's treatment status.

58. On September 10, 2020, Jewell (via MHL) issued an email to Auto-Owners Insurance following up on the request for the property damage claim file which was originally made on August 3, 2020.

59. On September 15, 2020, an email from "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," stated that the property damage file could be provided to Jewell. The email also contained a request for updated medical and billing records, treatment status, and status of the liability claim. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

60. On January 7, 2021, an email was received from "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," containing a copy of the liability carrier's policy. The email also contained a request for updated medical and billing records. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

61. By letter dated February 22, 2021, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," referencing C.R.S. 10-3-1118, requested that Jewell provide updated records pursuant to its January 7, 2021 letter/request. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

62. On February 25, 2021, Jewell (via MHL) issued an email to Auto-Owners Insurance indicating that the liability claim was still being negotiated, providing an update on the Plaintiff's treatment status, and reminding Auto-Owners Insurance that it is in possession of a signed medical authorization which enables it to request updated medical and billing records at any time.

63. On March 12, 2021, Jewell (via MHL) issued an email to Auto-Owners Insurance requesting consent to settle the liability claim for the $25,000 policy limits.

64. On March 23, 2021, Jewell (via MHL) issued an email to Auto-Owners Insurance following up on the request for consent to settle the liability claim for policy limits.

65. By letter dated April 8, 2021, "Tanya Churchwell, Branch Claims Rep, Auto-Owners Insurance," advised that she had questions about the causation of Jewell's injuries, that its retained expert, Dr. Marjorie Eskay-Auerbach, had provided an opinion that

**EXHIBIT A**

Jewell was not injured in the subject collision, that Jewell was not entitled to further UIM payments, as her damages did not exceed the $25,000 liability policy limits, that Auto-Owners Insurance would not seek subrogation of the $6,416.64 UM benefits that it had paid to Jewell, and that Auto-Owners Insurance was proceeding under a reservation of rights. The letter referenced C.R.S. 10-3-1118 regarding the provision of records and information. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

66. On June 2, 2021 Jewell (via MHL) issued a letter to Auto-Owners Insurance via post stating that, "the duty to cooperate in a policy does not relieve the insurer of its duty to investigate or to comply with section 10-3-1104." Auto-Owners Insurance was reminded that they are in possession of a signed medical authorization enabling them to obtain records at the time of their choosing and that their duty to investigate is not limited to demanding that the Plaintiff obtain records and provide them. An updated signed medical authorization was again provided on June 2, 2021, along with a USB containing medical and billing records.

67. On June 4, 2021, an email was received from "Jennifer Brand, Unit Specialist, Auto-Owners Insurance" requesting imaging in a PDF format.

68. On June 4, 2021, Jewell (via MHL) issued an email to Auto-Owners Insurance indicating that it was not possible to save DICOM images as a PDF and that the imaging was provided in its native format.

69. On November 30, 2021, an email was received from "Tanya Churchwell, Branch Claims Representative, Auto-Owners Insurance," requesting documentation pertaining to the settlement of the liability claim.

70. On November 30, 2021, a letter was received from "Tanya Churchwell, Branch Claims Representative, Auto-Owners Insurance," providing a summary of Jewell's medical records and requesting additional medical records for review. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

71. On January 19, 2022, a letter was received from "Tanya Churchwell, Auto-Owners Insurance" stating that a medical record review had been conducted by an expert. The expert report was not enclosed. The letter requested additional medical and billing records. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

# EXHIBIT A


72. On April 1, 2022 a letter was received from "Tanya Churchwell, Auto-Owners Insurance" providing a summary of the findings of the medical records review and referencing C.R.S. 10-3-1118 regarding the provision of records and information. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

73. On May 23, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance via certified mail providing a USB containing medical and billing records. Auto-Owners Insurance was informed that Jewell was still actively receiving treatment and scheduled to have surgery. Auto-Owners Insurance was informed that they did not need to invoke C.R.S. 10-3-1118 every time they desire a status update; a simple request would be sufficient. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

74. On August 1, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance via certified mail requesting valuation of the claim and requesting assistance obtaining billing records from Northern Colorado Pain Management. A USB containing medical and billing records was provided.

75. On August 29, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance via facsimile and via email requesting valuation of the claim.

76. On August 29, 2022, Jewell (via MHL) sent a facsimile transmission to Auto-Owners Insurance providing updated billing records from Northern Colorado Pain Management.

77. On September 1, 2022, a letter was received from "Tanya Churchwell, Auto-Owners Insurance" stating that records had been sent to Dr. Marjorie Eskay-Auerbach and Dr. Kathy McCranie for review.

78. Dr. McCranie is a physical medicine and rehabilitation physician whose main source of income is the provision of expert services and reports to insurance companies and insurance defense law firms for the purpose of defending against the legal claims of claimants who have suffered injuries and/or damages.

79. Auto-Owners Insurance and Owners Insurance use Dr. McCranie to assist it in denying or diminishing UM/UIM claims by Auto-Owners Insurance and Owners

**EXHIBIT A**

Insurance policyholders through reviews of policyholder medical records and billings without personally examining or talking with the injured policyholders.

80. Auto-Owners Insurance and Owners Insurance have used Dr. McCranie on many occasions to assist it in denying or diminishing UM/UIM claims by Auto-Owners Insurance and Owners Insurance policyholders through reviews of policyholder medical records and billings without personally examining or talking with the injured policyholders.

81. Dr. McCranie did not personally examine or talk with Jewell.

82. On September 28, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance requesting the status of the expert reviews.

83. On October 14, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance requesting the status of the expert reviews.

84. On November 2, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance requesting the status of the expert reviews.

85. On November 10, 2022, an email was received from "Tanya Churchwell, Bodily Injury Claims Specialist, Auto-Owners Insurance" stating that they were still awaiting the expert reports.

86. On December 1, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance requesting the status of the expert reviews and the status of the UIM claim valuation.

87. On December 12, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance requesting the status of the expert reviews and the status of the UIM claim valuation.

88. On December 29, 2022, Jewell (via MHL) issued a letter to Auto-Owners Insurance requesting the status of the expert reviews and the status of the UIM claim valuation.

89. On January 4, 2023, a letter was received from "Tanya Churchwell, Auto-Owners Insurance" containing a summary of the reports by Dr. Marjorie Eskay-Auerbach and Dr. Kathy McCranie. The Defendant referenced C.R.S. 10-3-1118 regarding the provision of medical records. (Auto-Owners Insurance was still in possession of a signed records release authorization.)

# **EXHIBIT A**

90. On January 9, 2023, Jewell (via MHL) issued a letter to Auto-Owners Insurance stating that their claim that Jewell has failed to respond to requests for treatment updates was incorrect. Details were provided regarding the provision of Jewell's medical records to Auto-Owners Insurance. Details were provided regarding the non-responsiveness and failure to investigate by Auto-Owners Insurance. Auto-Owners Insurance was reminded that they had failed to provide the expert reports by Dr. Marjorie Eskay-Auerbach and Dr. Kathy McCranie. Copies of their reports were previously requested.

91. On January 12, 2023, Auto-Owners Insurance provided copies of the expert reports by Dr. Marjorie Eskay-Auerbach and Dr. Kathy McCranie to Jewell (MHL).

92. On February 21, 2023, Jewell was examined by Dr. Frederic Sonstein, MD, an orthopedic surgeon, regarding her incident related injuries as well as her pre-incident injuries and condition. Dr. Sonstein also reviewed Jewell's prior and post incident medical records.

93. Dr. Sonstein stated, in his March 1, 2023 expert report, opinions including, but not limited to, the following: The May 1, 2018 incident aggravated Jewell's prior cervical condition; the incident aggravated Jewell's prior lumbar condition; the aggravations are permanent; all incident related treatment and expenses were reasonable and necessary; the aggravation of the lumbar condition necessitates future surgery; neck pain is apportioned 13% to the incident; low back pain is apportioned 56% to the incident; a cervical spinal cord stimulator might be necessary; extension of the lumbar fusion to L2-3 is likely.

94. On March 1, 2023, Jewell (via MHL) provided Dr. Sonstein's expert report to Auto-Owners Insurance via email.

95. On March 17, 2023, Jewell (via MHL) issued a letter to Auto-Owners Insurance advising that Jewell received the liability settlement check dated April 30, 2021 in the amount of $25,000 and would use April 30, 2023 as the putative UIM claim statute of limitations. Accordingly, a valuation for the UIM claim would be needed within a reasonable timeframe before the running of the statute of limitations on April 30, 2023.

**EXHIBIT A**

96. On April 12, 2023, Jewell (via MHL) issued a letter to Auto-Owners Insurance reiterating the statute of limitations advisement set forth in the March 17, 2023 letter and stating that a valuation for the UIM claim was needed within a reasonable timeframe before the running of the statute of limitations.

97. On April 24, 2023, "Tanya Churchwell, Auto-Owners Insurance" reiterated the denial of UIM coverage beyond the $6,416.64 "Fisher" payment previously made, standing on its denial as set forth in its January 4, 2023 letter, and also referring to opinions by Drs. Marjorie Eskay-Auerbach and Kathy McCranie in rebuttal to the opinions of Dr. Sonstein.

98. All letters, emails, and communications received from UIM claim adjuster Tanya Churchwell were represented to be on behalf of "Auto Owners Insurance."

99. "Auto Owners Insurance" is an association or group of insurance companies including, but not limited to, Auto-Owners Insurance Company and Owners Insurance Company.

100. Tanya Churchwell had apparent and actual authority to act on behalf of "Auto Owners Insurance" regarding all matters referenced in this Complaint.

101. Tanya Churchwell exercised actual authority to act on behalf of "Auto Owners Insurance" regarding all matters referenced in this Complaint.

102. Tanya Churchwell acted as the agent of her principal, "Auto Owners Insurance", within the scope of her authority, regarding all matters referenced in this Complaint.

103. Not a single letter, email, or communication from UIM claim adjuster Tanya Churchwell was represented to be on behalf of Owners Insurance Company.

104. Despite representing that she was acting on behalf of "Auto Owners Insurance" and despite not representing that she was acting on behalf of Owners Insurance Company, Tanya Churchwell had actual authority to act on behalf of Owners Insurance Company regarding all matters referenced in this Complaint.

105. Tanya Churchwell exercised actual authority to act on behalf of Owners Insurance regarding all matters referenced in this Complaint.

# EXHIBIT A

106. Tanya Churchwell acted as the agent of her principal, Owners Insurance Company, within the scope of her authority, regarding all matters referenced in this Complaint.

107. "Auto Owners Insurance" had apparent and actual authority to act on behalf of Owners Insurance Company regarding all matters referenced in this Complaint.

108. "Auto Owners Insurance" exercised apparent and actual authority to act on behalf of Owners Insurance Company regarding all matters referenced in this Complaint.

109. "Auto Owners Insurance" acted as the agent of its principal, Owners Insurance Company, within the scope of its authority, regarding all matters referenced in this Complaint.

## FIRST CLAIM FOR RELIEF
**(Determination of UIM Benefits)(Defendant Owners Insurance Company)**

110. The preceding paragraphs are incorporated herein.

111. Jewell is the owner of an automobile insurance policy, attached as Exhibit 1, issued by Owners.

112. Jewell is authorized by the terms of the Owners insurance policy and Colorado law to obtain a determination in a court of law of the amount of UIM benefits payable by Owners under the policy of insurance, and to have such determination rendered as a verdict.

113. Jewell has fully complied with all contractual obligations under the subject policy.

114. As a direct and proximate result of the negligence of the at-fault driver, Jewell's damages in excess of the liability policy limits, and Jewell's damages in excess of all "Fisher" payments made by Owners, Jewell has been deprived of UIM benefits due and payable under the policy and has suffered actual damages in an amount to be determined at the time of trial.

   WHEREFORE, Plaintiff demands judgment against Defendant for actual damages in an amount to be determined at trial, other foreseeable damages, incidental damages,

# EXHIBIT A

pre-judgment interest, post-judgment interest, costs, expert witness fees, and for such other relief as the Court deems proper.

### SECOND CLAIM FOR RELIEF
### (Breach of Contract)(Defendant Owners Insurance Company)

115.  The preceding paragraphs are incorporated herein.

116.  The Owners Insurance policy, attached as Exhibit 1, is a contract between Jewell and Owners Insurance whereby Jewell agreed to pay premiums in return for Owners agreeing to pay insurance benefits that she is entitled to receive.

117.  Owners breached its contractual obligations to Jewell by acts and omissions including, but not limited to, the following:
    a.  Failing to conduct a reasonable investigation of the UIM claim;
    b.  Failing to timely pay UIM benefits;
    c.  Failing to pay UIM benefits owed;
    d.  Failing to give equal consideration to the interests of its insured;
    f.  Putting its own interests ahead of its insured's interests;
    g.  Using after-acquired information to support its initial non-coverage decision;
    h.  Failing to cooperate with its insured;
    i.  Unreasonably delaying and denying UIM benefits to which Jewell was entitled to under the subject insurance policy.

118.  Jewell fully complied with all contractual obligations under the subject policy.

119.  As a direct and proximate result of Owner's breach of contract, Jewell was deprived of UIM benefits due and payable pursuant to the contract and has suffered actual damages in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff demands judgment against Defendant for actual contract damages in an amount to be determined at trial, other foreseeable damages, incidental damages, pre-judgment interest, post-judgment interest, costs, expert witness fees, and for such other relief as the Court deems proper.

### THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115 and § 10-3-1116)

# EXHIBIT A

**(Defendant Owners Insurance Company)**

120. The preceding paragraphs are incorporated.

121. Jewell is a "first party claimant" within the meaning of C.R.S. § 10-3-1115(b)(I).

122. Owners unreasonably delayed payment of UIM benefits owed to Jewell.

123. Owners did not have a reasonable basis for its delay.

124. Owners unreasonably denied payment of UIM benefits owed to Jewell.

125. Owners did not have a reasonable basis for its denial.

126. As a result of Owner's unreasonable delay and denial of payment of UIM benefits, Plaintiff suffered actual damages and Plaintiff is entitled to collect two times the covered benefit, attorney's fees, and court costs pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116.

   WHEREFORE, Plaintiff demands judgment against Defendant for actual damages and damages in an amount two times the actual damages determined at trial, incidental damages, pre-judgment interest, post-judgment interest, attorneys fees, costs, expert witness fees, and for such other relief as the Court deems proper.

Dated:  June 13, 2023

                              MAC HESTER, LLC

                              /s/ Mac Hester
                              Mac Hester
                              Original signature on file in counsel's office.

# EXHIBIT A